GARLAND *v.* ISBELL.

1. Where there have been two drawings for a prize in a lottery, and the prize is delivered to the second drawer, the first drawer can not maintain trover to recover the prize from the second drawer, by virtue of being the winner.  The law denounces the transaction as illegal, and neither party will be permitted to invoke the aid of the courts in respect to the same.

2. If the lottery keeper, after delivery to the second drawer, executes to the first drawer a bill of sale of the prize, reciting a nominal consideration, such bill of sale, if given and received not as an actual sale but

as a means to enable the first drawer to recover his prize from the second drawer, becomes tainted with the illegality of the transaction, and will not serve as a basis for recovery in an action by the first drawer against the second drawer to recover the prize.

3. But if after the drawings and the delivery of the property to the second winner it is sold by the owner to the first winner, though at a grossly inadequate price, and a bill of sale is executed in pursuance of such sale, upon a new consideration, and not merely as a colorable transfer to give one drawer a preference over the other in the drawing, such a sale will serve to pass the seller's title to the purchaser.

NOVEMBER 18, 1912.

Trover. Before Judge Jones. Stephens superior court. November 11, 1911.

*Fermor Barrett,* for plaintiff in error. *Claude Bond,* contra.

EVANS, P. J. The action was trover by J. E. D. Isbell against N. L. Garland to recover a horse of the value of two hundred dollars. It appeared from the evidence that the horse belonged to one Swilling, and was the prize in a "raffle" or lottery to which the owner had sold chances. Just before the drawing Swilling placed the horse in the livery-stable of the defendant. A drawing was had under the supervision of Swilling, and the plaintiff drew the prize. Some question was raised as to the fairness of the drawing, and another drawing was immediately had, in which the defendant drew the prize. The plaintiff did not participate in the second drawing. The drawing occurred at night, and the next morning Swilling executed a bill of sale to Isbell upon a consideration of five dollars. Concerning the execution of the bill of sale Swilling testified: "The next morning Dr. Isbell paid me five dollars for the horse, and I gave him the bill of sale for the horse. Dr. Isbell owed me $30 for the raffle tickets, gave me credit on my account which I owed him previously for $25, and paid the other $5 to me for the horse; the $5 paid me was for the bill of sale, and was paid to me in cash when I signed the bill of sale." Dr. Isbell testified: "I bought the horse in question and paid Swilling $5 for it. Of course he was raffled the night before. In the first raffle I got him, and in the second raffle Garland got him. I had $30 worth of chances at the horse. I gave Swilling credit on his account which he owed me for the $30 that I owed him for chances, and paid him $5 besides for the horse. After obtaining the bill of sale I demanded the horse, and Garland refused to deliver him. The horse was worth about $200." The defendant testified: "On the night before the

raffle took place Mr. Swilling brought the horse to my stable and said, 'Here is your horse.' After the raffle was over he came to my stable and said he would swap his horse for the one he left there in the evening—the one that was raffled." The jury returned a verdict for the plaintiff, which the court declined to set aside on motion for new trial. The complaint in the motion is that the court did not charge that if neither party had a valid title to the horse the verdict should be for the defendant, and that he erred in giving the following instruction: "Under the rules I give you, very much of this testimony has been eliminated from your consideration, and you must treat the evidence as introduced under the rules I have given you in charge in passing upon this case."

Lotteries are gaming devices and illegal. Property delivered up in a gaming enterprise was not recoverable at common law, but under our statute it may be recovered of the winner by the loser if the action is brought in six months. Civil Code, § 4256. The jury was instructed that the disposal of the horse by lottery was illegal, and that the plaintiff could not recover on the ground that he was the winner of the prize; they were also instructed that if the plaintiff's title was that of a purchaser, even on an inadequate consideration, he would be entitled to recover. But the charge of the court did not clearly present the principle that if the bill of sale was given and accepted, not as an independent transaction, but as a means to enable the plaintiff to recover his winning from the defendant, the plaintiff could not prevail. There was no dispute that the horse was worth about $200; and though its owner could sell it at a price grossly disproportionate to its real value, so as to pass to the seller a valid title, yet the full merits of this controversy can not be determined without deciding the issuable fact as to whether the alleged sale was an independent transaction, entirely disassociated with the gaming enterprise, or was a cloak to enable one who claimed to be the winner of the horse to recover it from another who also claimed to be the winner. In view of the court's instruction as a whole, we think the giving of the excerpt to which exception is taken, without indicating what particular part of the testimony was eliminated from the consideration of the jury, was calculated to prejudice the defendant.

*Judgment reversed. All the Justices concur.*